STATE OF IOWA v. J. E. McPHERSON, Appellant.

**Burglary:** OBJECTION TO GRAND JURY: WAIVER.  A defendant held to
1  answer before the return of an indictment who fails to appear and
challenge the grand jury, although at an adjourned term, waives
any objection to the selection and drawing of the jury.

**Burglary:** EVIDENCE.  In a prosecution for burglary, evidence exam-
2  ined and held to sustain a verdict of guilty.

*Appeal from Page District Court.*— HON. W. R. GREEN,
Judge.

WEDNESDAY, DECEMBER 14, 1904.

THE defendant was convicted of the crime of burglary,
and appeals.— *Affirmed.*

*W. P. Ferguson* and *Earl R. Ferguson,* for appellant.

*Charles W. Mullan,* Attorney-General, and *Lawrence
De Graff,* Assistant Attorney-General, for the State.

LADD, J.— The accused was arrested on preliminary
information, and being held to answer at the next term of
the district court, convening December 8, 1903, was released
upon the execution of an appearance bond.  An
order had been entered by the presiding judge,
postponing that term until January 5, 1904,
because of sickness.  At the convening of the court the grand
jurors drawn in 1903 appeared, and from these the grand
jury which returned the indictment was selected and im-
paneled.  The defendant, though called, failed to appear,
and was held to " have waived all objections to the grand
jury."  The indictment was returned January 13, 1904, and
on the 24th day of February, the defendant moved that it be
set aside on the ground that the period during which the

jurors composing the grand jury might serve as such had expired January 1st previous to the finding of the indictment. Authority to postpone the term is conferred on the judge who is to preside by section 235 of the Code, and under the provisions of section 237 the defendant was required to appear at the adjourned term. The opportunity of challenging the panel was open to him at that time, and by failing to exercise the right he waived all objection to the selection and drawing of the jury. Sections 5321, 5241, Code; *State v. Ingalls,* 17 Iowa, 8; *State v. Dixon,* 3 Iowa, 416. Having waived the irregularity, if any there was, it is scarcely necessary to add that he was not in a situation to avail himself of it as a ground of a motion in arrest of judgment. It must not be inferred that we regard the point raised as well taken. But for some slight changes in the language of the statutes *State v. Winebrenner,* 67 Iowa, 230, is an authority to the contrary. All we now hold is that appellant, having waived the objection, could not urge it after the return of the indictment.

II.   That some one removed two lights and the crossbar from the back window of Huldah Ohlssen's millinery store in Essex, leaving an open space 12¾ by 28 inches, is put beyond doubt by the evidence. She had

2. BURGLARY: evidence.

bolted the doors and nailed down the windows, and covered the latter with boards before leaving in July, and upon her return in December she found the window as stated, the bolt removed from the back door, and the latch turned. Considerable ribbon had been taken; also a jewelry case with some jewelry. Some silk mittens, ties, velvet ribbons, and plumes had been taken from the places where she had left them and packed in a pasteboard box and put on an empty shelf. The defendant owned the adjoining building, and in connection with George Haepner, had been operating a restaurant there from March until the fore part of December. They were succeeded by one Priest for a few days, and then by Conrad, who con-

ducted a shooting gallery therein.    About the middle of the
month Conrad found a lady's astrakhan cap in a box at the
back end of the building.    This belonged to Huldah Ohlssen,
and had been left in her store when closed in July previous.
One Tutt orally leased the building of defendant in December
(and subsequently turned it over to Conrad), and upon his
return to Shenandoah had a talk with the defendant, who,
according to Tutt's testimony, said, " There was another
graft close to me that could be worked "— a millinery stock;
that there was some money in it; that he had been in the
building, and had a box of goods over in their place; that
" we had a box of goods in the place, and George's heart
failed him, and we took it back." The defendant admitted
telling Tutt that the back door of the millinery store was
unlocked, but otherwise denied having made the statements.
He admitted that two boxes, one with the cap in it, had been
in their restaurant, but testified that Haepner had confessed
having entered the store and taken them, and had, on his ad-
vice, promised to return them.    He denied all connection
with the crime, and declared that, as he was a large man,
weighing two hundred and twenty-six pounds, he could not
have entered through the space left in the window.    We have
set out the evidence somewhat in detail, because appellant
relies mainly on its insufficiency for a reversal.    We think
it was enough to have carried the case to the jury.    If Tutt
told the truth as the jury must have thought, the defendant
admitted having been in the store, and this under circum-
stances indicating that it happened during the absence of the
proprietor; also that he was interested with Haepner in the
possession of the box of goods taken therefrom.    Other evi-
dence tended to show that he could have gone through the
window; but, even were this impossible, he might, for all that
appears, have entered by opening the door.    Whether he
broke and entered, or aided and abetted Haepner so to do,
was for the jury to determine, and we are not inclined to
interfere with its conclusion.    The evidence was such as to

call for an instruction as to whether he was guilty of aiding and abetting another in the commission of a crime. The ruling respecting a conversation of one Preston with Haepner about shipping two trunks of the latter to Red Oak were proper, as the relevancy of the testimony was not disclosed by the interrogatories or otherwise.—*Affirmed.*